# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

JESSE H. SWINSON,

    Petitioner,

v.                                                         Case No. 03-C-0679

MATTHEW J. FRANK,

    Respondent.

## DECISION AND ORDER

       Petitioner Jesse H. Swinson is presently serving a sentence in the Wisconsin prison system for three counts of theft by fraud, contrary to Wis. Stat. § 943.20(1)(d), and one count of bailjumping in violation of Wis. Stat. § 946.49(1)(b). He claims that his conviction and sentence resulted from the violation of rights guaranteed him under the United States Constitution and seeks federal habeas corpus under 28 U.S.C. § 2254. The Respondent has moved to dismiss Swinson's pro se petition on the ground that it is a mixed petition containing both exhausted and unexhausted claims. In the alternative, the Respondent argues the petition should be denied on the merits because Swinson fails to establish that the state court decisions affirming his conviction and sentence were contrary to established federal law.

       Although the petition includes several claims as to which Swinson did not fully exhaust his state court remedies, I conclude that state court remedies for those claims are no longer available because of Swinson's procedural default. While the procedurally defaulted claims must be dismissed, I conclude that the exhaustion requirement has been met as to the remaining claims and

proceed to consider them. Finding no merit in any claim properly before me, I conclude that the petition should be denied and the action dismissed.

**I. FACTS**

As a result of an internal audit conducted in 1989, Swinson's former employer, the Kohler Company, discovered that it had paid more than $250,000, based on what appeared to be phony invoices, to Dynamic Control Engineering (DCE), a dummy business Swinson had incorporated shortly after his employment with Kohler began. In 1991, a federal grand jury sitting in the Eastern District of Wisconsin indicted Swinson on seventeen counts of mail fraud, in violation of 18 U.S.C. § 1341, based on allegations that sixteen checks and one money order had been mailed to DCE in payment of the phony invoices. The case was tried in federal court in 1993. At the close of the evidence, the trial court dismissed all but one count because the government had failed to establish that the checks had been mailed. The jury convicted Swinson on the remaining count, and he was sentenced to thirty months in prison. On appeal, however, the Seventh Circuit held that the evidence was insufficient to establish that the mail had been used even for the count that went to the jury. The Court reversed the conviction and remanded the case to the district court with instructions to enter a judgment of acquittal. *United States v. Swinson*, 993 F.2d 1299 (7th Cir. 1993).

The State of Wisconsin then instituted a state prosecution of Swinson in the Circuit Court for Sheboygan County based on the same course of conduct. On June 9, 1994, Swinson was charged in an information with fifteen counts of theft by fraud. Following another trial, a jury returned a verdict of guilty on all fifteen counts, and sentencing was set for May 3, 1995. Swinson

failed to appear for sentencing, however, and the State issued a new complaint charging him with bailjumping and obtained a warrant for his arrest. Four years later, Swinson was returned to court for sentencing on the theft by fraud counts on which he had gone to trial and the bailjumping charge on which he had entered a plea of guilty. The court sentenced him to a combined total of twenty-nine years in prison, eight years each on three of the theft charges and five years on the bailjumping, with all sentences to be served consecutively. On the remaining twelve counts of theft, the court withheld sentence and placed Swinson on probation for a term of ten years consecutive to his prison term.

On October 16, 2001, after a lengthy delay caused by his inability to obtain counsel, Swinson filed a motion for post-conviction relief in which he claimed that the evidence at trial was insufficient to establish venue, the fifteen-count information filed against him was multiplicitous, his state conviction for the same conduct that gave rise to the federal prosecution violated his right to equal protection of the law, and his trial counsel was ineffective for failing to raise the foregoing issues at the time of trial. The trial court rejected each claim and denied the motion. Swinson thereafter appealed to the Wisconsin Court of Appeals asserting the same four claims. In a published opinion, *State v. Swinson*, 2003 WI App 45, 261 Wis. 2d 633, 660 N.W.2d 12 (Wis. App. 2003), the court of appeals rejected each of Swinson's claims and affirmed his conviction. Swinson then filed his petition for habeas corpus in federal court.

Swinson's petition for habeas corpus asserts nine separate grounds upon which he claims he is entitled to relief under § 2254:

1. Conviction obtained in violation of the protection against trial in venue or jurisdiction other than where "Acts" constituting crimes were actually performed;

2. Conviction obtained in violation of the protection against double jeopardy; In that restitution ordered was duplicate punishment since civil case netted damages of [$]975,000 for same acts;"

3. Conviction obtained in violation of equal protection of the law under the double jeopardy clause as applied to Wis. Stats. § 939.71 and 961.45, "same acts doctrine;"

4. Conviction obtained in violation of the protection against use of a sham prosecution to retry "ACTS" of a prior federal prosecution that was overturned due to lack of evidence;

5. Conviction obtained as a result of vindictive prosecution, at the urging of Kohler Co., after exercising appeal rights in federal court;

6. Conviction obtained as a result of the division of a single crime into multiple charges against the multiplicity doctrine of the double jeopardy clause since the legislature intended only charge for a continuous scheme or course of conduct;

7. Conviction was obtained as a result of the juries [sic] ignorance of the law requiring absolute proof of venue and the courts [sic] abuse of discretion in not properly informing the jury of the states [sic] burden of proof regarding venue;

8. Conviction was upheld by the court of appeals [sic] insertion of its own inferences regarding venue, law requires remand if more than one inference may be had; and

9. Conviction obtained in violation of the protection against denial of effective assistance of counsel.

(Pet. ¶ 22.)

As to at least four of the grounds asserted, Swinson has failed to exhaust his state court remedies. For this reason alone, the respondent contends his petition should be dismissed. Alternatively, respondent argues that the petition should be denied since the state court decisions are in accord with clearly established federal law.

4

## II. ANALYSIS

### A. Exhaustion and Procedural Default

A federal court may not grant a petition for a writ of habeas corpus filed on behalf of a person serving a sentence imposed by a state court unless it appears:

(A) the applicant has exhausted the remedies available in the courts of the State; or

(B)(i) there is an absence of available State corrective process; or
(ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

28 U.S.C. § 2254(b)(1). Exhaustion serves the strong interest in federal-state comity by giving state courts the first opportunity to address and correct potential violations of a prisoner's federal rights. *Picard v. Connor*, 404 U.S. 270, 275 (1971). "For that opportunity to be meaningful, the petitioner must fairly present to each appropriate state court his constitutional claims before seeking relief in federal court." *Perruquet v. Briley*, 390 F.3d 505, 513 (7th Cir. 2004). Thus, it is not enough for a state prisoner to assert a claim in the trial court and then abandon it. To exhaust his state court remedies as to a claim, a state prisoner must present that claim to each appropriate state court, including the state's highest court if such review is available. *O'Sullivan v. Boerckel*, 526 U.S. 838, 847-46 (1999).

It is also not enough for a state prisoner to exhaust state court remedies as to only some of the claims upon which he claims he is entitled to federal relief. In order to fulfill the exhaustion requirement for federal habeas corpus relief, a state prisoner must fully exhaust his state court remedies as to all of his claims. *Rose v. Lundy*, 455 U.S. 509, 521-22 (1982). In *Rose*, the Court adopted a total exhaustion rule on the grounds that such a rule would promote federal/state comity and judicial economy, and would not unreasonably impair the prisoner's right to relief. *Id.* at 522.

5

Under that rule, a state prisoner who files a mixed petition containing both exhausted and unexhausted claims is usually given the option of either dismissing his petition and returning to state court to pursue the unexhausted claims, or abandoning the unexhausted claims and proceeding on those claims that remain. Swinson was given that option in this case (docket # 4), but did not respond. Because of this failure, the respondent argues that his entire petition must be dismissed.

Swinson has failed to exhaust his state court remedies as to the second (double jeopardy based on restitution and civil damage award), fourth (sham prosecution), fifth (vindictive prosecution), and eighth (improper decision-making by court of appeals) grounds. However, as the respondent points out, it is too late for him to return to state court at this point. Under *State v. Escalona-Naranjo*, 517 N.W.2d 157, 162-64 (Wis. 1994), he is barred from obtaining collateral state court review absent proof of a "sufficient reason" to excuse his failure to present them earlier. Since he apparently has no reason for his failure to present them earlier, Swinson has procedurally defaulted his unexhausted claims. Procedural default also operates as a bar to federal habeas review. *Perruquet v. Briley,* 390 F.3d at 514. But the inclusion of procedurally defaulted claims in a petition for habeas corpus does not bar federal review of those claims for which state court remedies have been fully exhausted:

> The exhaustion requirement does not apply, however, in cases where the state courts would not consider the unexhausted claims because they are procedurally barred. *Doctor v. Walters*, 96 F.3d 675, 681 (3d Cir.1996); cf. *Toulson v. Beyer*, 987 F.2d 984, 987 (3d Cir.1993) ("A petition containing unexhausted but procedurally barred claims in addition to exhausted claims, is not a mixed petition requiring dismissal under Rose." ). This conclusion stems from the doctrine that exhaustion is not required where pursuit of state remedies would be futile. *Doctor*, 96 F.3d at 681; *Szuchon v. Lehman*, 273 F.3d 299, 323-24 n. 14 (3d Cir.2001); cf. 28 U.S.C. § 2254(b)(1)(B) (excusing exhaustion where "there is an absence of available State corrective process").

*Slutzker v. Johnson*, 393 F.3d 373, 380 (3d Cir. 2004).

6

Where exhaustion is excused because of this form of futility, the habeas doctrine of procedural default may apply to bar relief on those claims that have not been exhausted. *Id.* "The procedural default doctrine, which like the exhaustion doctrine is grounded in principles of comity, federalism, and judicial efficiency, normally will preclude a federal court from reaching the merits of a habeas claim when either (1) that claim was presented to the state courts and the state-court ruling against the petitioner rests on adequate and independent state-law procedural grounds, or (2) the claim was not presented to the state courts and it is clear that those courts would now hold the claim procedurally barred. *Perruquet*, 390 F.3d at 514. A procedural default will bar a federal court from granting relief on a habeas claim unless the petitioner demonstrates cause for the default and prejudice resulting therefrom, *Wainwright v. Sykes*, 433 U.S. 72, 87-88 (1977), or, alternatively, he convinces the court that a miscarriage of justice would result if his claim were not entertained on the merits, *Murray v. Carrier*, 477 U.S. 478, 495-96 (1986).

I conclude from the foregoing that Swinson's second, fourth, fifth and eighth claims are barred from federal habeas review under the procedural default doctrine. By failing to raise these claims in the Wisconsin Court of Appeals and seek review of them in the Wisconsin Supreme Court, Swinson has waived any right he had to further state court review. And because he has failed to establish cause for his failure to do so and prejudice resulting therefrom, or that a miscarriage of justice will occur if review is denied, federal review is not available either. Accordingly, Swinson's second, fourth, fifth and eighth claims will be dismissed, and I now turn to the substantive merits of the remaining claims.

### B. Substantive Merits Of Remaining Claims

Once a state prisoner has exhausted his state court remedies, federal court review of claims arising under federal law is available under § 2254. But federal review is not de novo. Federal

habeas relief may not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court decision is "contrary to" Supreme Court precedent when "the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases," or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent." *Williams v. Taylor*, 529 U.S. 362, 405 (2000). The state court decision involves an unreasonable application of such law if "the state court identifies the correct governing legal rule from [Supreme Court] cases but unreasonably applies it to the facts of the particular state prisoner's case," or "the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Id.* at 407. I must presume that the state courts' factual findings are correct. 28 U.S.C. § 2254(e)(1). This presumption may be rebutted only by clear and convincing evidence. *Id.*; *Foster v. Schomig*, 223 F.3d 626, 631 (7th Cir. 2000). It is with these principles in mind that I turn to Swinson's remaining claims.

**1. Venue**

Swinson's first and seventh claims involve challenges to venue. Swinson contends that the state failed to produce sufficient evidence to show that any of the elements of the crimes occurred

8

in Sheboygan County, where his trial was held. He also contends in claim seven that the trial court failed to instruct the jury on the issue of venue. However, both of the claims Swinson raises concerning venue arise under Wisconsin's venue statute and provide no basis upon which federal relief under § 2254 could be granted.

The United States Constitution contains two provisions that address venue in criminal prosecutions:

> Article III of the Constitution requires that "[t]he Trial of all Crimes ... shall be held in the State where the said Crimes shall have been committed." Art. III, § 2, cl. 3. Its command is reinforced by the Sixth Amendment's requirement that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed,"

*United States v. Rodriques-Moreno*, 526 U.S. 275, 278 (1999). Although Article III is considered a venue provision, the relevant provision in the Sixth Amendment has been described as a vicinage provision since it specifies the place from which the jurors are to be selected. *See United States v. Passodelis*, 615 F.2d 975, 977 n. 3 (3d Cir. 1980). Article III sets forth the judicial power of the United States over federal prosecutions and has never been held applicable to the states. It would appear to have no application here since Swinson is in custody as a result of a state prosecution. The Sixth Amendment, on the other hand, including its vicinage provision, has been found applicable to the states through the Due Process Clause of the Fourteenth Amendment. *See Taylor v. Louisiana*, 419 U.S. 522 (1975); and *Davis v. Warden, Joliet Correctional Inst.*, 867 F.2d 1003, 1010 (7th Cir. 1989). But Swinson never raised a Sixth Amendment challenge to venue and, even if he had, it would not have helped. "[T]he geographic restraints of the Sixth Amendment only prohibit federal courts from reaching beyond either the state or the federal judicial district to obtain

jurors." *United States v. Ashley*, 54 F.3d 311, 314-15 (7th Cir. 1995). There is no suggestion of such an occurrence here.

Swinson's claim is that he was tried in the wrong county, but this is a question of state law. Wis. Stat. § 971.19(1) provides that criminal actions are to be tried in the county where the crime was committed. For crimes that consist of two or more acts, "the trial may be in any county in which any of such acts occurred." Wis. Stat. § 971.19(2). Here, the trial court and Wisconsin Court of Appeals reached the entirely reasonable conclusion that the proper venue for multiple crimes of defrauding a Sheboygan County business of more than a quarter million dollars by submitting phony invoices to that business was Sheboygan County. Even if the state courts are wrong, it affords no basis for the federal relief Swinson now seeks. "It is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). Accordingly, Swinson's first and seventh claims based on improper venue fail.

**2. Equal Protection**

For his third claim, Swinson argues that by subjecting him to a second state prosecution after the unsuccessful federal prosecution, the state violated his Fourteenth Amendment right to equal protection of the law. Under the "dual sovereign" doctrine, of course, a person can be prosecuted by both the state and federal government for essentially the same crime. *See Abbate v. United States*, 359 U.S. 187, 194 (1959), and *Bartkus v. People of Illinois*, 359 U.S. 121 (1959). However, Wisconsin, like a number of states, have enacted legislation to protect individuals from multiple prosecutions for the same crime. Section 939.71 of the Wisconsin Statutes, for example, provides:

10

> If an act forms the basis for a crime punishable under more than one statutory provision of this state or under a statutory provision of this state and the laws of another jurisdiction, a conviction or acquittal on the merits under one provision bars a subsequent prosecution under the other provision unless each provision requires proof of a fact for conviction which the other does not require.

Wis. Stat. § 939.71 (2003-04).

This provision offered no protection to Swinson in this case, however, because the mail fraud charges on which he was prosecuted in federal court included an element, namely, use of the U.S. mail, that the state charges of theft by fraud did not. Swinson does not argue otherwise. Instead, his claim is that Wisconsin treats drug offenders differently and this difference in treatment constitutes a denial of his right to equal protection. Drug offenses in Wisconsin are covered by Chapter 961 of the Wisconsin Statutes. Section 961.45 states:

> If a violation of this chapter is a violation of a federal law or the law of another state, a conviction or acquittal under federal law or the law of another state for the same act is a bar to prosecution in this state.

Wis. Stat. § 961.45. In *State v. Hansen*, 2001 WI 53, 627 N.W.2d 195, the Wisconsin Supreme Court construed this section to mean that a person prosecuted in federal court for a drug offense could not be prosecuted in state court for the same conduct, even if the federal offense includes elements different from the state offense. So construed, § 961.45 provides broader protection against subsequent prosecutions to drug offenders than § 939.71 provides to persons who commit non-drug offenses. In *Hanson*, for example, the defendant's prior federal conviction for conspiracy to distribute controlled substance was held to bar a subsequent state prosecution for possession of a controlled substance with intent to deliver, even though the federal conspiracy charge contained elements the state charge did not. Compare 21 U.S.C. § 841(a) and § 846 with Wis. Stat. § 961.41(1m)(cm)4. If the same rule applied in this case, the state would have been unable to

11

prosecute Swinson for theft by fraud after the federal prosecution was dismissed. He contends that this difference in treatment violates his right to equal protection.

But the Equal Protection Clause of the Fourteenth Amendment does not require that all persons be treated the same. *Thielman v. Leean*, 140 F. Supp.2d 982, 997 (W.D. Wis. 2001). It simply requires that those who are similarly situated be treated similarly absent a rational basis for distinguishing between them, unless the distinction drawn is based upon a protected class or the exercise of fundamental right, in which case the classification will be subject to strict judicial scrutiny. *Kadrmas v. Dickenson Public Schools*, 487 U.S. 450, 457-58 (1988); *Wroblewski v. City of Washburn*, 965 F.2d 452, 459 (7th Cir. 1992)(The equal protection clause's proscription of differential treatment applies only where individuals are similarly situated.) Because the disparity Swinson complains of does not involve a suspect class or impinge on the exercise of a fundamental right, a rational basis is all that is required. *See United States v. Lawrence*, 951 F.2d 751, 753-55 (7th Cir. 1991) (rational basis sufficient to justify disparate penalties for offenses involving cocaine and cocaine base).

Under the rational basis standard, legislation is presumed to be valid, and will be sustained as long as the classification drawn by the statute is rationally related to a legitimate state interest. *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432 (1985). Under the rational-basis test, the official decision maker that established the classification or category need not "actually articulate at any time the purpose or rationale supporting its classification." *Nordlinger v. Hahn*, 505 U.S. 1, 15 (1992). "Instead, a classification must be upheld against equal protection challenge if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *Heller v. Doe*, 509 U.S. 312, 320 (1993) (internal quotation marks and citations omitted). Further,

12

> the state has no obligation to produce evidence to sustain the rationality of a statutory [or rule] classification."[A] legislative choice is not subject to courtroom factfinding and may be based on rational speculation unsupported by evidence or empirical data. A statute is presumed constitutional, and "the burden is on the one attacking the legislative arrangement to negative every conceivable basis which might support it," whether or not the basis has a foundation in the record.

*Id.* at 321.

In this case, the Wisconsin Court of Appeals concluded that Swinson had failed to prove the unconstitutionality of the application of Wis. Stat. § 939.71 to his case. In reaching this conclusion, the Court of Appeals accepted the state's argument that the legislature could have chosen to bar subsequent drug prosecutions based on the same conduct because of the strong presence of federal authorities in drug prosecution. 660 N.W.2d at 24. The state court also concluded that the legislature could have chosen not to abrogate the dual sovereignty doctrine in non-drug cases because it concluded that the interests of the state and federal authorities in such cases is different. *Id.* at 25. Given the role of the federal government in drug prosecution and differences in the nature of the crimes themselves, the court concluded Swinson had failed to establish that § 939.71 was unconstitutional as applied to him.

Regardless of whether I agree with the Wisconsin Court of Appeals' analysis, I may not grant Swinson's petition for § 2254 relief unless it is "contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Swinson's equal protection claim does not meet this standard. The Wisconsin court's decision is neither contrary to, nor did it unreasonably apply, Supreme Court precedent. Swinson has cited no decision by the United States Supreme Court that suggests otherwise, and my own research has disclosed none. Drug offenses, as well as the federal government's response to such offenses, are sufficiently different from other types of offenses and

13

the federal response thereto that a state could reasonably choose to limit the use of its prosecutorial and judicial resources to conduct that has not already been the subject of federal prosecution. At least no decision by the Supreme Court has suggested otherwise. Accordingly, Swinson's equal protection claim must fail.

**3. Double Jeopardy/Multiplicity**

Swinson also claims that the state's prosecution of him for fifteen counts of theft is multiplicitous and therefore violated his protection against double jeopardy guaranteed by the Fifth Amendment. The double jeopardy clause of the Fifth Amendment, which is enforceable against the states through the Fourteenth Amendment, *Benton v. Maryland*, 395 U.S. 784 (1969), is intended to provide three protections: protection against a second prosecution for the same offense after acquittal; protection against a second prosecution for the same offense after conviction; and protection against multiple punishments for the same offense. *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969). Swinson's challenge falls under the third protection against multiple punishments for the same offense. The fifteen separate theft charges against Swinson were based upon fifteen separate invoices he submitted to Kohler on behalf of DCE over a time span of some two years. Swinson argues that the fifteen separate counts constitute a single offense as a matter of law and that by dividing them up into fifteen charges, the state subjected him to multiple punishments for the same offense.

This claim, too, is without merit. The double jeopardy clause of the Fifth Amendment explicitly prohibits placing a person twice in jeopardy for the same offense. The Supreme Court has consistently interpreted it "to protect an individual from being subjected to the hazards of trial and possible conviction more than once for an alleged offense." *Green v. United States*, 355 U.S. 184, 187 (1957). *See also Burks v. United States*, 437 U.S. 1, 11 (1978). Swinson's multiplicity

14

claim is not that he was tried twice for the same offense, but that the state tried him once on fifteen counts for conduct that only constitutes a single crime. In this context, the Court has held that "the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended." *Missouri v. Hunter*, 459 U.S. 359, 366 (1983). Thus, Swinson's double jeopardy claim is reduced to a question of statutory construction. That question is whether the Wisconsin legislature intended to allow multiple punishments for separate acts of theft that are part of a single scheme.

Swinson offers no evidence to suggest that the Wisconsin legislature did not intend to allow multiple punishments under the circumstances presented here. The plain fact is that Swinson committed multiple thefts by fraud against his employer. Each phony invoice submitted by him contained a separate false representation that was intended to, and did, induce Kohler to issue DCE a separate check. Not only did the invoices contain different misrepresentations and induce separate payments, but they were submitted at different times over a period of two years. The suggestion that multiple incidents of theft cannot be separately charged and punished just because they arose out of the same scheme against the same victim finds no basis in law or in logic. Certainly, it finds no support in the decisions of the Wisconsin Supreme Court, which has construed § 943.20 to allow multiple prosecutions even for a theft of multiple items arising out of a single incident. *See State v. Trawitzke*, 628 N.W.2d 801 (Wis. 2001) (upholding conviction for ten counts of theft of firearm for the theft of ten firearms taken at the same time from the same residence).

Finally, Swinson offers no argument that the decision of the Wisconsin Court of Appeals rejecting his multiplicity claim was contrary to or constituted an unreasonable application of clearly established federal law. He simply repeats the arguments made in that court. His own disagreement

15

with the state court's decision, however, is not grounds for federal relief. Accordingly, Swinson's multiplicity claim is rejected.

**4. Ineffective Assistance of Counsel**

Lastly, Swinson claims his trial counsel was ineffective in failing to recognize and assert the various claims that he has raised in his petition for § 2254 relief before this court. Having found no merit in any of the claims raised by Swinson, this claim fails as a matter of course. As the Court of Appeals noted, "trial counsel's failure to bring a meritless motion does not constitute deficient performance." 660 N.W.2d at 26.

Accordingly, and for the reasons set forth above, the petition for a writ of habeas corpus is **DENIED** and the action is ordered **DISMISSED**. All other motions filed by Swinson, to the extent they have not already been disposed of, are **DENIED AS MOOT**. The clerk of court is directed to enter judgment accordingly.

**SO ORDERED**.

Dated this   16th   day of August, 2005.

s/ William C. Griesbach  
William C. Griesbach  
United States District Judge

16

Case 1:03-cv-00679-WCG   Filed 08/16/05   Page 16 of 16   Document 61